

THE CITY OF NEW YORK

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

# LAW DEPARTMENT
100 Church Street
NEW YORK, NY 10007

**LUCA DIFRONZO**
(212) 356-2354
ldifronz@law.nyc.gov
*Assistant Corporation Counsel*

July 6, 2023

**BY ECF**
The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: <u>Hafif v. Rabbi Eli J. Mansour, et al.</u>, 22-CV-01199 (LDH) (RML)

Your Honor:

    I am Assistant Corporation Counsel in the Office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, representing defendants NYPD Officers Derby St. Fort, Mo Tsang, Samuel Shaya, Andre Ross, and Gaspar Sciacca in the above captioned-case. I write today to respectfully ask the Court to: (1) recommend his case be dismissed pursuant to Fed. R. Civ. P. 41(b); and (2) extend the above NYPD defendants' time to respond to plaintiff's complaint *sine die* pending the disposition of their instant Fed. R. Civ. P. 41(b) motion or production of a § 160.50 release.[1]

### I.    Background

    In review, plaintiff's nearly one-hundred page operative complaint brings no less than thirteen causes of action arising from a three day span of March 2021 against dozens of defendants, both civilian and law enforcement. (See ECF No. 59). Specifically, plaintiff claims that, on March

---

[1] Simultaneously with this letter, defendants have filed a separate letter to the Hon. LaShann DeArcy Hall addressing plaintiff's filings that challenge Your Honor's Order through both objections to the District Court and leave to seek Second Circuit interlocutory relief. (See ECF No. 72 (Pl.'s Letter to District Court); ECF No. 73 (Motion for Leave to Appeal In Forma Pauperis); ECF No. 74 (Notice of Appeal)).

1

9 and 10 of that year, NYPD officers inadequately responded to demonstrations outside his Brooklyn home that were organized by a private group protesting his multiyear refusal to deliver a "Get," or Jewish divorce decree, to his first wife. (See id.) Thereafter, plaintiff claims that the NYPD conspired with these protestors in effectuating his March 11, 2021 arrest on domestic violence charges, despite his own admission that both an outstanding NYPD complaint was filed and a publicly disseminated audio recording exists corroborating the allegations. (See id.)

Plaintiff filed the original complaint in March of 2022 (see ECF No. 1), and, shortly after service of the first NYPD defendant, this office reached out to plaintiff to obtain a 160.50 release, the document now at issue. He refused, and in private communications, as well as through at least one filing, partially justified this decision because he was not intending to bring claims dependent upon the existence of probable cause. (See Pl.'s Opp. to Premotion Conference, ECF No. 53 ("I did not plead a cause of action for false arrest"). He subsequently amended the pleading on March 7, 2023, adding numerous NYPD defendants and causes of action, including those previously disavowed claims of false arrest and malicious prosecution. In defendants' March 17, 2023 motion for an extension to respond to the amended complaint, we noted that the addition of these theories of liability to the operative complaint mandated plaintiff's execution of a 160.50 release prior to defendants' filing of any responsive pleading. (See ECF No. 61).

As detailed more fully in defendants' first motion to compel, defendants' renewed efforts to obtain the release have been exhaustive, yet ultimately fruitless. They included at least three phone calls and two follow-up emails in March and April of this year—all but one of which went unanswered. On May 5, 2023, the singular time I spoke to plaintiff on the phone, I reiterated the importance of the release and expressed defendants' willingness to seek judicial intervention of its production should plaintiff's recalcitrance continue. Plaintiff then asked for a digital copy of the document, promising that he would return it executed the following week. Despite sending the release to his email listed on the docket (and confirmed in that phone call), defendants' request—once again—went ignored.

Faced with no other option, defendants moved this Court to order plaintiff to produce the release at issue on May 17, 2023. (See ECF No. 66). The Court granted this motion shortly thereafter, but plaintiff nonetheless continued in his defiance, and, accordingly, defendants once again moved for the release's production on June 6, 2023. (See ECF No. 71). In that request, defendants specifically asked The Hon. Robert M. Levy to warn plaintiff about the possibility of continued noncompliance with court orders, including dismissal of plaintiff's case under Fed. R. Civ. P. 41(b) or other sanctions. (See id.). That motion went unopposed, and, on June 12, 2023, the Court issued a second order mandating execution of the release, warning plaintiff of the adverse consequences of his further refusal "include[e] a possible recommendation that this case be dismissed for failure to comply with court orders." (Minute Entry dated June 12, 2023). The Court set June 26, 2023 as the deadline by which plaintiff was to produce the release. To date, he has still not done so, and, indeed, has since indicated that he will not comply with the Court's orders.

II.     **Dismissal Under Fed. R. Civ. P. 41(b)**

Fed. R. Civ. P. 41(b) provides that [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."

2

"The Second Circuit has stated that 'the primary rationale underlying dismissal under [Rule] 41(b) is the failure of plaintiff in his duty to process his case diligently.'" Dodson v. Runyon, 957 F. Supp. 465, 470 (S.D.N.Y. 1997) (quoting Lyell Theater Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982)).

A plaintiff's *pro se* status does not alleviate their obligation to prosecute. Although *pro se* litigants should be afforded latitude, they must nonetheless inform themselves of basic procedural rules and how to comply with them, "especially when they can be understood without legal training and experience." Yadav v. Brookhaven Nat'l Lab., 487 F. App'x 671, 672 (2d Cir. 2012), citing Caidor v. Onondaga Cnty., 517 F.3d 601, 605 (2d Cir. 2008). Courts repeatedly have found that "dismissal of an action is warranted when a litigant, whether represented or instead proceeding *pro se*, fails to comply with legitimate court directives." Ayala v. Fid. Ins. Co., 2016 U.S. Dist. LEXIS 22091, at *3 (E.D.N.Y. Feb. 22, 2016). This is so because, even though all parties have a right to be heard in a proper tribunal, "this right is qualified by the obligation to comply with lawful court orders." Watkins v. Merchese, No. 13 Civ. 03267 (GBD) (SN), 2015 U.S. Dist. LEXIS 100521, at *3 (S.D.N.Y. July 31, 2015).

The Second Circuit has laid out a five-factor analysis in motions made pursuant to Fed. R. Civ. P. 41(b) that accounts for: (1) the significance of the delay, (2) the existence of notice to the noncomplying party, (3) the degree of potential prejudice to the party seeking dismissal, (4) the balance between the need to alleviate court congestion and a party's opportunity to be heard, and (5) the consideration of lesser, alternative sanctions. See Lewis v. Rawson, 564 F.3d 569, 575 (2d Cir. 2009); United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2004)). While no singular factor is dispositive, U.S. ex rel. Pervez v. Maimonides Med. Ctr., 415 F. App'x 316, 317 (2d. Cir. 2011), here, all five factors militate strongly towards dismissal.

First, when considering the length of the delay, courts analyze both the time of the delay and its source. See United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2004). Plaintiff filed this lawsuit in March of 2022, shortly after which this office began to reach out to collect the release at issue. While plaintiff originally claimed he was not pursuing claims of false arrest or malicious prosecution (see ECF No. 53), he apparently decided otherwise when filing his amended complaint on March 7, 2023, and thereafter the attempt to collect the document began again in earnest. Accordingly, the delay attributable to plaintiff's refusal to allow access to the documents, even if measured from the date of defendants' renewed attempts, now measures approximately four months. During this time, defendants have twice moved to compel the release, and plaintiff has flatly refused to comply with the Court's directives to do so. In cases such as here, where a delay is solely attributable to a party's willful noncompliance, as opposed to negligence or factors beyond their control, dismissal under 41(b) is especially appropriate. See, e.g., Feurtado v. City of New York, 225 F.R.D. 474, 479 (S.D.N.Y. 2004) (collecting cases of appropriate 41(b) dismissal for intentional noncompliance ranging from ten days to four months).

Second, plaintiff has been clearly notified of the repercussions of continued noncompliance, both by defendants themselves in their underlying motions and most recently by the Court. The language employed in Your Honor's most recent Order was clear and left no ambiguity on the point—should plaintiff continue to disregard the Court's orders, the ramifications

could "include[e] a possible recommendation that this case be dismissed for failure to comply with court orders." (Minute Entry dated June 12, 2023).

Third, "when a plaintiff offers no reasonable excuse for the delay, prejudice to the defendant is presumed because, as litigation drags on, evidence can be lost and discovery becomes more difficult." Montanez-Garcia v. City of New York, 16 Civ. 6479 (LAP), 2018 U.S. Dist. LEXIS 106807, at *5-6 (S.D.N.Y. June 25, 2018). This is exactly the risk defendants face here, and plaintiff's excuses for noncompliance—raised in a cursory and procedurally defective manner—fall far below the standard for "reasonable" excuse. (See ECF No. 72).

Fourth, the Court, not to mention defendants, has spent time and effort managing this case without any indication that plaintiff intends to do the same. Denying the instant motion would burden the Court's already overcrowded docket with a case that plaintiff is intentionally complicating by failing to provide defendants with a copy of the release. The obligation to move a case to trial is on plaintiff, thus, "dismissal is warranted where there is a lack of due diligence in the plaintiff's prosecution of the lawsuit by plaintiff." West v. City of New York, 130 F.R.D. 522, 524 (S.D.N.Y. 1990). Any detrimental effect to plaintiff's opportunity to be heard was completely avoidable; had plaintiff complied with the courts' orders, he may very well have already been "heard" or otherwise obtained some form of relief. The balance between these two inquiries tips heavily towards the relief requested herein because the risk of further, unwarranted docket congestion is massive when compared to the self-inflicted injury, if any, to plaintiff's right to adjudication on the merits.

Finally, absent any indication that plaintiff intends to meaningfully engage in even the pleadings stage, a sanction less than dismissal would be ineffective. Plaintiff's numerous rationales for refusing to produce the release—including fear of self-incrimination—are unlikely to evaporate after defendants file an answer or other responsive pleading to his complaint. In fact, if plaintiff is hesitant to unseal public records, efforts to obtain future discovery, especially information over which he has exclusive control, may very well be even more frustrating. Additionally, plaintiff is proceeding *pro se*, and courts commonly infer that, with similar litigants, "monetary sanctions would be meaningless." Juliao v. Charles Rutenberg Realty, Inc., No. 14-CV-0808, 2018 U.S. Dist. LEXIS 161124, 2018 WL 4502172, at *5 (E.D.N.Y. Sept. 20, 2018

Accordingly, all five factors weigh in favor of dismissal of plaintiff's claim under Fed. R. Civ. P. 41(b).

### III. Extension *Sine Die* to Defendants' Deadline to Answer Pending Disposition of Their Motion for Dismissal Under Fed. R. Civ. P. 41(b) or Production of the Criminal Records Release At Issue

Since plaintiff filed the operative complaint, defendants have twice moved for an extension of time to file their responsive pleading, both of which were based on plaintiff's refusal to provide a § 160.50 release. (See ECF Nos. 61, 66). As had been made abundantly clear, plaintiff still has not done so, such that the same rationale militates towards granting defendants an extension to respond to the operative complaint *sine die* until the underlying cause of the delay—which is solely attributable to plaintiff's noncompliance with Your Honor's Orders—is resolved, whether by dismissal under Fed. R. Civ. P. 41(b) or compliance with the Court's previous two orders. See

Balkani v. the City of New York, 18-CV-3159, 2018 U.S. Dist. LEXIS 185005, at *5 (S.D.N.Y. Oct. 26, 2018) (in granting a 41(b) motion, noting that defendants time to answer had been adjourned *sine die* pending production of the documents at issue).

    **IV.**    **Conclusion**

In conclusion, defendants respectfully request the Court recommend dismissal of plaintiff's complaint under Fed. R. Civ. P. 41(b) and ask that their deadline to respond to the operative complaint be extended *sine die* until the earlier of plaintiff's compliance with the Order at hand or disposition of the instant motion.

Thank you for your consideration in this matter.

    Respectfully Submitted,

    *[signature]*
    Luca Difronzo
    Attorney for Defendants
    *Assistant Corporation Counsel*
    New York City Law Department
    100 Church Street
    New York, NY 10007
    (212) 356-2354
    ldifronz@law.nyc.gov

**VIA ECF**
Plaintiff, *pro se*
All Counsel of Record